[L. A. No. 12809.   S. F. No. 14225.—July 31, 1931.]

FIRST NATIONAL TRUST AND SAVINGS BANK OF SAN DIEGO (a Corporation), as Executor, etc., Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, OCCIDENTAL INDEMNITY COMPANY (a Corporation) et al., Respondents.

James G. Pfanstiel and Eugene Daney for Petitioner.

Edward O. Allen, F. Britton McConnell and Jennings & Belcher for Respondents.

Redman, Alexander & Bacon and R. P. Wisecarver, *Amici Curiae.*

CURTIS, J.—Petitions for transfer to this court of this proceeding, after decision by the District Court of Appeal of the Fourth District, were filed by the Occidental Indemnity Company and by the Industrial Accident Commission. These petitions we granted and the whole matter is

now before us as presented upon the original pleadings of the parties filed in the District Court of Appeal.

At the time of granting said petitions we were and still are in perfect agreement with the opinion of the District Court of Appeal in so far as it annulled the order of the Commission dismissing the Occidental Indemnity Company from liability. We were in doubt, however, as to the correctness of the opinion in failing to annul the order of the Commission dismissing the First National Trust and Savings Bank of San Diego and its insurance carrier, The Fidelity and Casualty Company of New York, from liability.

There is no contention but that the First National Trust and Savings Bank of San Diego was during all of the times mentioned in the proceeding a corporation organized, existing and doing business under the laws of the United States of America, and as such was authorized to carry on the banking business, both savings and commercial, and also to transact a general trust business. Being incorporated as a trust company it had the power and authority to act as the executor of the last will of a decedent when appointed to act in that capacity by any court of competent jurisdiction. While acting as the executor of the will of a deceased, if it undertook to carry on any business on behalf of the estate of said decedent, it became personally liable to all persons employed by it in such business not only for their wages but, in our opinion, for compensation in case any of such employees sustained a compensative injury while in its employ. "While an executor or an administrator is bound to perform his decedent's contracts, except as authorized by will, or by statute, he cannot by virtue of his general powers as such make any contract which binds the estate, or create any debt or liability against the deceased, or the estate, which will authorize a judgment *de bonis decedentis,* even though it is made in the interest of and for the benefit of the estate he represents, and although he is described in such contract as personal representative." (11 Cal. Jur., p. 1046.) "An executor or administrator does not, by his contracts, bind the estate he represents, but he is personally liable on his contracts for necessary matters relating to the estate, such as for services rendered in the performance of his duties as such." (11

Cal. Jur., p. 1048; *Golden Gate Undertaking Co.* v. *Taylor*, 168 Cal. 94 [Ann. Cas. 1915D, 742, 52 L. R. A. (N. S.) 1152, 141 Pac. 922]; *Southern Pac. Co.* v. *Swanson*, 73 Cal. App. 229 [238 Pac. 736].) Under the provisions of the Workmen's Compensation, Insurance and Safety Act (secs. 7 [Stats. 1929, p. 306] and 8), Bojens was an employee of the First National Trust and Savings Bank of San Diego. The latter was, therefore, personally liable in compensation for the injury to him and can only be relieved of this liability by a finding of the Industrial Accident Commission that it has complied with the Workmen's Compensation Act in protecting itself by securing proper and adequate compensation insurance. (Sec. 30 [e] [1] [Stats. 1929, p. 1167].) We think there can be no question but that this result followed from the facts shown herein. The bank, acting as executor, employed Bojens to perform certain duties for it in the settlement of said estate. As already noted, while the bank as executor employed Bojens, it was liable to him in its individual capacity for his wages. The amount paid as wages to Bojens would, if legally incurred, be allowed the bank by the court upon the settlement of the bank's annual or final account. Being the employer of Bojens at the time of the injury of the latter, the bank was liable for compensation to him on account of said injury, the same having arisen out of and in the course of his employment. It is, therefore, clear that the Commission was in error in finding that the First National Trust and Savings Bank was not individually liable for the payment of compensation arising from the injuries sustained by Bojens.

As we have seen, the bank at the time of Bojen's injury carried compensation insurance with The Fidelity and Casualty Company of New York. The policy issued to the bank by this company insures the bank against liability for injuries sustained by its employees in the course of its banking business. This appears in certain "declarations" set forth therein under the head of "Classification of Operations". The classification of operations reads as follows: "Banking: Clerical Office Employees . . . including all Executive Officers." By section 2 of the California Bank Act (Stats. 1913, p. 137), "Banks are divided into the following classes: (a) Savings Banks; (b) Commercial

Banks, and (c) Trust Companies." In the *Estate of Wellings,* 192 Cal. 506, 519 [221 Pac. 628, 634]; this court held, "that it was competent for the legislature, considering the business which trust companies are doing in this state, to define such business as banking". It would appear, therefore, that the word "banking" in this state, by legislative enactment and judicial sanction, has been accorded a meaning sufficiently comprehensive to include the business carried on by trust companies. Therefore, when the policy of insurance issued by The Fidelity and Casualty Company purported to cover the employees of the First National Bank of San Diego employed by it in its banking business, by its very terms it covered those employees of the bank whose duties were confined to the trust department carried on by the bank. It might be questioned whether the classification "Clerical Office Employees" would cover Bojens, who was, as we have seen, employed in the cigar business, which the bank as executor was carrying on. There were other provisions of the policy, however, which in our opinion extended the coverage provisions of the policy to all employees of the bank whether expressly included in the above classification or not. The policy issued by The Fidelity and Casualty Company was a standard form of policy provided by the law of this state. It contained provisions regarding occupations of the insured other than, and in addition to, those set forth in the "declarations" of the policy identically like those in the policy of indemnity considered by this court in the case of *Ocean Accident & Guarantee Corp.* v. *Industrial Acc. Com.,* 194 Cal. 127 [228 Pac. 1]. ■ We there held that the description in the declarations of classes of occupations in which the insured might engage, was not intended as limiting the list of operations, but only as fixing a premium rate applicable to the particular operations described therein; and that even though the insured was engaged at the time of the injury in work outside the terms and limitations expressed in said classifications, the effect was not to take the employer or employee outside the protection of the policy, but only to require the employer to pay a different premium than that provided for the particular employments specified in the declarations. The court in that opinion followed its prior ruling expressed in the case of *Worswick Co.* v. *Industrial Acc. Com.,* 181 Cal. 550

[185 Pac. 953]. The rule thus announced is applicable to the facts in the present proceeding. ■ While the occupation in which Bojens was engaged at the time of his injury may not have been expressed in the "classification of operations" contained in the "declarations" of the policy, other provisions of the policy were sufficiently broad and comprehensive to include him within the protection of the policy. One particular provision of the policy to which we refer is as follows: "This agreement shall apply to such injuries so sustained by reason of the business operations described in said declarations which for the purpose of this insurance shall include all operations necessary, incident or appurtenant thereto or connected therewith whether such operations are conducted at the work places defined and described in said declarations or elsewhere in connection with or in relation to such work places."

Under this provision of the policy we are clearly of the view that The Fidelity and Casualty Company is liable as the insurer of the bank for the injury sustained by Bojens, while in the service of the bank as executor of the will of said decedent.

■ The argument is advanced by The Fidelity and Casualty Company that in the instant case it is in the same position as if it had insured a private individual carrying on a business who, while the insurance was in force, had been appointed executor of the will of a decedent. In such a case it is claimed and rightly so, that the insurance carrier of the private business of the individual would not be liable for any injury sustained by an employee of this same individual while acting as executor. The cases are not analogous. In the case of a private individual appointed to administer an estate, the settlement of the estate is distinct from and cannot in any sense be held to be a part of his private business. In the case of a bank, with the powers of a trust company, the administration of estates under appointment of the court is just as much a part of its corporate business as the receiving of deposits over its bank counter or the loaning of funds entrusted to it. A private individual, acting as executor, carries on the business of the estate entirely separate and distinct from his private business, while a trust company in performing like services

is simply carrying out the objects and purposes of its creation. The argument, we think, is not sound.

We are appending hereto the opinion of the District Court of Appeal written by Presiding Justice Barnard annulling the order of the Commission dismissing from liability the Occidental Indemnity Company as adopted by us. It correctly expresses our views upon the questions considered and is as follows:

"This is a petition for a writ of review, seeking to annul an award made by the Industrial Accident Commission.

"Charles Hascall and S. W. Powell, as copartners, were conducting a wholesale and retail cigar store in the city of San Diego. On December 28, 1928, the respondent Occidental Indemnity Company issued to them a standard form workmen's compensation policy, covering the employees of said business from that date until December 28, 1929. About May 1, 1929, Hascall purchased the partnership interest of Powell in said business, and, thereafter, until his death, continued to conduct the business under the same name of Hascall & Powell, with no change in the manner of conducting the business, or in the nature of the employment of one Rinehard Bojens, who had been an employee of the partnership. On September 27, 1929, the said Hascall died, and the First National Trust & Savings Bank of San Diego, a corporation, was appointed executor of his estate. The executor continued to operate the cigar store to the end that it might be sold as a going concern. One of the employees of the cigar store was made manager thereof by the executor, at an increased salary, and the other employees, including Bojens, were continued at the same work and at the same salary as before. On November 15, 1929, the said Rinehard Bojens, in the regular course of his employment in said cigar business, received injuries which resulted in blood poisoning and caused his death on January 18, 1930. Shortly after November 15, 1929, one Robert E. Holmes, through whom the Occidental policy was procured, was notified of the injury. After making some investigation, Holmes referred the matter to the respondent Occidental Indemnity Company, which company on December 30, 1929, wrote to an adjuster in San Diego, requesting him to make further investigation, which he did. It is admitted that Holmes knew that Hascall had purchased the partnership interest of Powell shortly after

that transaction occurred and also knew that he was continuing the business as sole owner thereof. Also, that Holmes knew of the death of Hascall within a few days after it occurred, and prior to the date Bojens was injured. On December 27, 1929, respondent Occidental Indemnity Company issued a statement, addressed to Holmes, calling for an additional premium, based upon the wages actually paid by the business during the entire policy year, including the period during which the business was operated by Hascall alone and also the period during which the business was operated by the executor. The amount of this additional premium was paid by the executor to Holmes on January 6, 1930. It also appears that upon the expiration of the policy year on December 28, 1929, the policy was renewed for another year. The First National Trust & Savings Bank of San Diego carried a workmen's compensation policy with the respondent The Fidelity and Casualty Company of New York, which policy was written for the benefit of all of the employees of the bank, as set forth in said policy. After a hearing, with various continuances, the respondent Industrial Accident Commission made an award in the amount of $5,000 in favor of the dependent wife and children of Bojens, and found that the First National Trust & Savings Bank of San Diego, executor of the estate of Charles Williams Hascall, deceased, was the employer of the said Bojens at the time of his injury, and that said employer was not insured. An order was also made dismissing the proceedings as to the First National Trust & Savings Bank individually, as to The Fidelity and Casualty Company of New York, a corporation, and as to Occidental Indemnity Company, a corporation. A petition for a rehearing was later denied by the Industrial Accident Commission.

"It is conceded by all parties that the dependent wife and children of Bojens are entitled to the award made, the only question raised being as to whom should pay the same. It is also conceded that the insurance policy issued by the Occidental Indemnity Company was in full force and effect at the time of the injury, unless the same had been avoided either by the transfer of the interest of S. W. Powell to Charles Hascall, or by his subsequent death and the continuance of the business by his executor. In behalf of the

respondents, it is urged that in the policy referred to the Occidental Indemnity Company insured a particular entity, namely, the partnership of Hascall & Powell, and that at the time of his fatal injuries Bojens was not the employee of this entity, but was the employee of the Trust Company in its capacity as executor; it being urged that the employer, within the meaning of the policy, was twice changed after the policy was issued.

"Item 1 of the declarations in this policy reads as follows:

" 'Name of this Employer Charles Hascall and S. W. Powell, d.b.a. Hascall & Powell

" 'P. O. Address 1072–4th Street, San Diego, California.

" 'Street        City or Town

" 'For the purpose of serving notice, as in the policy provided, this Employer agrees that this address may be considered as both the residence and business address of this Employer or any representative upon whom notice may be served.

" 'Individual co-partnership, corporation or estate? Co-partnership.'

"It will be noted that under 'Name of this Employer', there are set forth two names, who are described as 'doing business as Hascall & Powell'. In paragraph one (a) of the policy the company agrees with this employer to pay to any person entitled thereto under the Workmen's Compensation Law the entire amount of any sum due. It will be noted that the policy, in naming the employer, names two individuals who are not even described as a copartnership. It does not specify that the partnership, as an entity, is named as the employer. While a little further down there appears a description as a copartnership, this is not included under the name of the employer. Not only does the policy fail to specify that the employer insured is a copartnership, as an entity, but in this state a partnership is not usually considered a legal entity. (20 Cal. Jur. 680; *People* v. *Maljan,* 34 Cal. App. 384 [167 Pac. 547]; *Woodward* v. *McAdam,* 101 Cal. 438 [35 Pac. 1016].) The point relied upon by respondents as freeing the Occidental Indemnity Company from liability under this policy is a most technical one. If we are to be extremely technical in interpreting this policy, it would seem that, strictly speaking, in naming the employer, this policy has insured two in-

dividuals, Charles Hascall and S. W. Powell, while they are doing business as Hascall & Powell. In other words, they are each insured while doing business under that firm name. While one of them dropped out of the business, the other continued to run the same business in the same manner and in the same name, so that not even such an increase of risk could be claimed, as might have occurred if a new personality had been brought into the business. Strictly interpreted, the policy insured either Charles Hascall ·or S. W. Powell while doing business as Hascall & Powell.

■ If an ambiguity exists, an insurance policy should be strictly construed against the insurer who prepared it. (*Welch* v. *British American etc. Co.*, 148 Cal. 223 [113 Am. St. Rep. 223, 7 Ann. Cas. 396, 82 Pac. 964].) Had this insurance company desired to insure only this copartnership as an entity, it could have been easily so designated in naming the employer.

■ ''In any event, we feel that section 2557 of the Civil Code applies. This section reads as follows: 'A transfer of interest by one of several partners, joint owners, or owners in common, who are jointly insured, to the others, does not avoid an insurance, even though it has been agreed that the insurance shall cease upon an alienation of the thing insured.'

■ ''That section applies to all kinds of insurance. (Civ. Code, sec. 2534.) Respondents insist that this section does not apply, but should be interpreted in connection with the entire code, particularly in connection with the provisions with respect to dissolution of copartnerships. It is urged that by these latter provisions, a transfer from one of only two partners to the other, effects a dissolution of the partnership, and that section 2557 was meant to apply only when there are more than two partners, and where the partnership would not be dissolved by the transfer of the interest of one to the others remaining. If that were the case, section 2557 would have no meaning in respect to partnerships because, by the law of partnership, the transfer of the interest of any one partner dissolves the partnership, no matter how many partners remain. It is also urged that the word 'several' in section 2557 means more than two. While that is one meaning of the word, there are also other meanings, such as, different and separate. The word

is often used to designate a number greater than one. The section refers not only to partners, but to joint owners or owners in common. And in speaking of such owners, no reason appears why the beneficent provisions of the section should be limited to cases where more than two are involved. It seems to us that the object and purpose of the section is to provide for a perfectly natural and just situation, and that it was intended to apply to such a transfer by one of two or more such parties. The section is unquestionably remedial, and for the benefit of the insured, and as such, should be liberally construed. This section of the Civil Code was a part of this insurance contract. (*General Acc. etc. Corp.* v. *Industrial Acc. Com.,* 196 Cal. 179 [237 Pac. 33].) We are therefore of the opinion that the transfer of the interest of S. W. Powell in this business to Charles Hascall did not avoid this policy and that Charles Hascall continued as the employer named in the policy up to his death.

"Among the conditions of the policy in question, section D reads as follows: 'The obligations of paragraph one (a) foregoing are hereby declared to be the direct obligations and promises of the Company to any injured employee covered hereby, or, in the event of his death, to his dependents; and to each such employee or such dependent the Company is hereby made directly and primarily liable under said obligations and promises. This contract is made for the benefit of such employees or such dependents and is enforceable against the Company, by any such employee or such dependent in his name or on his behalf, at any time and in any manner permitted by law, whether claims or proceedings are brought against the Company alone or jointly with this Employer. If the law of any state in which the policy is applicable provides for the enforcement of the rights of such employees or such dependents by any commission, board or other state agency for the benefit of such employees or such dependents, then the provisions of such law are made a part hereof, as respects any matter subject thereto, as fully as if written herein. The obligations and promises of the Company as set forth in this paragraph shall not be affected by the failure of this Employer to do or refrain from doing any act required by the policy; nor by any default of this Employer after the

accident in the payment of premiums or in the giving of any notice required by the policy or otherwise; nor by the death, insolvency, bankruptcy, legal incapacity or inability of this Employer, nor by any proceeding against him as a result of which the conduct of this Employer's business may be and continue to be in charge of an executor, administrator, receiver, trustee, assignee or other person.'

■ ''Charles Hascall being, up to the time of his death, the employer of Bojens, the section of the policy just. quoted not only makes the insurance company directly and primarily liable to Bojens for the obligations of paragraph one (a). thereof, which was to pay the amount due to his dependents under the Workmen's Compensation Law, but the last sentence of the paragraph quoted provides that this obligation and promise of the company shall not be affected by the death of this employer, nor by any proceedings as a result of which this employer's business should continue in charge of an executor. It is argued by the respondent Occidental Indemnity Company that this provision only applies and refers to a death of an employer, and the administration of his estate, taking place after the injury to the employee. We think this position cannot be maintained. Such an interpretation would make the clause meaningless, as the liability of the insurance company would, in the absence of this provision in the policy, become fixed at the date of an injury occurring during the life of the employer, and would not be affected by his later death. Moreover, the policy specifically refers to 'after the accident' in the second clause preceding this one, but makes no such reference in the clause in question. We conclude, therefore, that under the law and the provisions of this particular policy, it was still in force at the date of the injury to Bojens, and that respondent Occidental Indemnity Company was responsible for the payment of the award. It follows, therefore, that the finding of the Commission, that the employer was uninsured at the time of the injury, is not supported by the evidence.

■ ''An attempt is made by petitioner to establish that respondent Occidental Indemnity Company is estopped to deny its liability by reason of having sent out a bill for an additional premium, after the date of the injury to Bojens. While the record shows that Holmes through whom the policy was originally secured, had knowledge of the transfer of

Powell's interest in the business to Hascall, and later of the death of Hascall, the record fails to show that Holmes was an agent of the Occidental Indemnity Company and nothing appears in the record to definitely show knowledge upon the part of the insurance company itself, prior to December 30, 1929.

"The equities are with the petitioner in this proceeding. While Holmes testified that he was a broker, and he was not clearly shown to have been the agent of this insurance company, the general situation was one that might easily mislead an employer. The insurance company received its premium, the risk was not increased, the executor paid the additional premium covering the entire year, and the policy was renewed at its expiration. Holmes having been informed of the changes, it was a natural thing to rely on the policy as continuing. While the knowledge of Holmes was not definitely fastened upon the company, the circumstances are such as to further justify the rule that a contract should be strictly interpreted against the party who drew it."

For the reasons set forth, the award of the Industrial Accident Commission is annulled and the matter is referred to said Commission for a further order, consistent with the views herein expressed.

Seawell, J., Preston, J., Shenk, J., Richards, J., and Langdon, J., concurred.

Rehearing denied.