FIRESTONE TIRE & RUBBER COMPANY *v.* WEBB.

4-7433                                   182 S. W. 2d 941

Opinion delivered October 30, 1944.

*W. C. Rodgers,* for appellant.

*Jas. S. McConnell,* for appellee.

McFADDIN, J.   The appellee, D. C. Webb, and his brother, Truett Webb, signed and delivered to appellant a financial statement which read: "For the purpose of obtaining merchandise from Firestone Tire & Rubber Company, on credit, we make the following statement in writing, intending that your company should rely thereon respecting our financial condition as of February 15, 1940."

Then followed in the financial statement details of assets and liabilities showing net worth of $9,550; and the statement then concluded, as follows:

"Firm name, Truett Webb. Date signed, 2/15, 1940, by Truett Webb, D. C. Webb."

The Firestone Tire & Rubber Company immediately commenced shipments as ordered, charging the shipments to "D. C. and Truett Webb." The account continued until January 21, 1942, at which time appellant claimed a balance due and unpaid of $379.98. Action was filed in the Howard circuit court against Truett Webb and D. C. Webb for this last named amount. Truett Webb was in the United States Army, and, as to him, the case was continued under the Soldiers and Sailors Civil Relief Act (U.S.C.A., Title 50, Apx. § 501 *et seq.*). D. C. Webb unsuccessfully sought continuance because of the absence of Truett Webb in the military service. Then D. C. Webb filed his answer (1) containing general denial, and (2) admitting his signature on the said financial statement, but claiming that he signed only to show his financial worth for one note of $500, long since paid. Over the objection and exception of appellant, the trial court permitted D. C. Webb to testify in support of his second defense; and this is assigned as error.

The appellant asked its instruction number 3, as follows:

"The defendant, D. C. Webb, in his answer, states that at one time he did sign a note for Truett Webb to the plaintiff as an accommodation endorser, and at the time of signing the said note he did sign a financial statement to enable Truett Webb to purchase the merchandise for which the note was given, but for no other reason. That the said note has been paid, partly in cash and partly by the return of merchandise for which the said note was given. You are instructed that this statement of the answer of the defendant, D. C. Webb, is no defense and should be disregarded."

The trial court refused to give the instruction as requested, and appellant duly excepted. Then the court, on

its own motion, amended the instruction by adding at the end thereof, these words: "provided you find they were partners or joint debtors to plaintiff." The appellant duly excepted to the giving of the instruction as amended. From a verdict and judgment exempting D. C. Webb from any liability, appellant has appealed.

I. *"Firm Name" Is Synonymous With "Partnership" in This Case.* It was admitted by D. C. Webb that he and Truett Webb each signed the financial statement. This financial statement read: "Firm name, Truett Webb." The words "firm name" have in this case—in the absence of any corporate status—the same meaning as "partnership name." Ballentine's *Law Dictionary,* edition of 1930, p. 507, says of "firm name," "the name adopted by a partnership under which it transacts its business. Such a name may be the name of one or all the members of the firm, or it may be a fictitious name, . . ."

In 36 C. J. S., 821, of "firm" it is said: "It is said to be a conventional term applicable only to the persons who, on each particular occasion when the name is used, are members of the firm." In 47 C. J. 647: "The word 'firm' is defined as the name, title, or style under which a company transacts business; a partnership of two or more persons; a commercial house. In its common acceptation the term implies a partnership."

Webster's *New International Dictionary* says of "firm": "The name, title or style under which a company transacts business; the firm name; hence, a partnership of two or more persons;" and listed as synonyms are: "company, house, partnership."

Bouvier's *Law Dictionary,* Eighth Edition, p. 1232, says: "FIRM. The persons composing a partnership, taken collectively. The name or title under which the members of a partnership transact business. The word is used as synonymous with partnership. The words 'house,' 'concern,' and 'company' are also used in the same sense." See, also, "firm" in 17 *Words and*

*Phrases,* Perm. Ed., p. 56; and see: *In re Klein's Estate,* 35 Mont. 184, 88 Pac. 798; *Thomas-Bonner Co.* v. *Hooven, Owens & Rentschler Co.,* 284 F. 377; *People* v. *Strauss,* 97 Ill. App. 47; *Bredhoff* v. *Lepman,* 181 Ill. App. 247.

So we hold that when D. C. Webb signed the statement listing the firm name as "Truett Webb," then D. C. Webb said in law that D. C. Webb and Truett Webb were partners trading under the firm name of "Truett Webb."

II. *Parol Evidence Cannot Vary the Written Instrument.* D. C. Webb testified that he signed the statement for only one note of $500, but that testimony was inadmissible, as seeking to vary or alter the written statement, which said "for the purpose of obtaining merchandise from the Firestone Tire & Rubber Company, on credit, we make the following statement in writing . . ." In *Outcault Advertising Company* v. *Bradley,* 105 Ark. 50, 150 S. W. 148, the appellee had sought to show, by parol, an agreement different from the writing; and Mr. Justice KIRBY, speaking for the court, said:

"The statement of appellee, attempted to be introduced in evidence, related to a matter that he claimed was discussed before the execution of the contract, and as an inducement thereto, but it was entirely at variance with its terms, as expressed in writing, and no error was committed in excluding it from the jury.

" 'Parol contemporaneous evidence is inadmissible to contradict, or vary the terms of a valid written instrument,' and there is no ambiguity or uncertainty in the written instrument which would permit the introduction of parol testimony in explanation of it."

In *West-Winfree Tobacco Co.* v. *Waller,* 66 Ark. 445, 51 S. W. 320, the appellee had signed an instrument in the nature of a guaranty bond for a salesman, and the appellee sought to show by parol that the length of duration of the guaranty was only thirty days. Denying this evidence Mr. Justice HUGHES said:

"There is no ambiguity in the meaning of the note guaranteed by the appellees, and its proper construction was that asked to be placed upon it in the fourth instruction asked for by the plaintiff, which the court refused to give, and in so doing committed error, in our opinion.

"The testimony of Waller and of Couey was incompetent, and the court erred in admitting it. It tended to contradict or vary the terms of an unambiguous written contract." See, also, *Ford* v. *Fix,* 112 Ark. 1, 164 S. W. 726; *Cherokee Construction Company* v. *Prairie Creek Coal Mining Company,* 102 Ark. 428, 144 S. W. 927; *Quartermous* v. *Kennedy,* 29 Ark. 544; *Richardson* v. *Comstock,* 21 Ark. 69; *Armstrong* v. *Union Trust Co.,* 113 Ark. 509, 168 S. W. 1119.

The rule of these cases applies here. The testimony of D. C. Webb sought to limit, and thereby vary, the signed statement, and was therefore inadmissible. So the trial court erred (1) in allowing D. C. Webb to testify as to the limitations of the signed statement, and (2) in refusing appellant's instruction No. 3.

III. *Partnership by Estoppel.* The appellant showed that it relied on the truth of the financial statement and the fact that it was signed by D. C. Webb as a partner, and made shipments on the truth of the statement. No claim was made by D. C. Webb that he had ever notified appellant of any revocation of the statement. In *Watkins* v. *Moore,* 178 Ark. 350, 10 S. W. 2d 850, we said:

"It is well settled in this state that, when a person holds himself out, by word or deed, to another as a partner, and thereby induces him to extend credit to the partnership on the faith of such representation, he cannot shield himself from liability under the partnership. When a person holds himself out as a member of a partnership, anyone dealing with the firm on the faith of such representation is entitled to act on the presumption that the relation continues until notice of some kind is given of its discontinuance. *Brugman* v. *McGuire,* 32 Ark. 733;

*Herman Kahn Co.* v. *Bowden,* 80 Ark. 23, 96 S. W. 126, 10 Ann. Cas. 132; and *Gershner* v. *Scott-Mayer Commission Co.,* 93 Ark. 301, 124 S. W. 772, 27 L. R. A., N. S., 914, 137 Am. St. Rep. 95.'' See, also, *Fredericktown Milling Co.* v. *Rider,* 179 Ark. 387, 16 S. W. 2d 9.

In 40 Am. Jur. 179, in discussing partnership liability by estoppel, it is stated:

''It is a thoroughly well-settled rule that persons who are not as between themselves partners, or as between whom there is in fact no legal partnership, may nevertheless become subject to the liabilities of partners, either by holding themselves out as partners to the public and the world generally or to particular individuals, or by knowingly or negligently permitting another person to do so. All persons who hold themselves out, or knowingly permit others to hold them out, to the public as partners, although they are not in partnership, become bound as partners to all who deal with them in their apparent relation.''

And in 40 Am. Jur. 180 it is further stated:

''The liability as a partner of a person who holds himself out as a partner, or permits others to do so, is predicated on the doctrine of estoppel and on the policy of the law seeking to prevent frauds on those who lend their money on the apparent credit of those who are held out as partners. One holding himself out as a partner or knowingly permitting himself to be so held out is estopped from denying liability as a partner to one who has extended credit in reliance thereon, although no partnership has in fact existed.''

By signing the statement, D. C. Webb became liable as a partner by estoppel to appellant; and the trial court erred in amending the plaintiff's instruction No. 3, and giving it as amended.

IV. *Confession of Judgment.* The deposition of Truett Webb was taken while he was in the military service, and was read in evidence. In that deposition Truett Webb admitted the amount due the plaintiff by

Truett Webb to be $174.50. The court gave the *defendant's* instruction No. 3, reading as follows:

"You are instructed that the defendant, Truett Webb, has admitted that he owes the plaintiff the sum of $174.50 and had tendered his check payable to the clerk of this court for the said sum which includes interest to this date, and unless you find from the evidence the said defendant, Truett Webb, is indebted to the plaintiff in a greater sum than $174.50 your judgment should be for the plaintiff for the said sum of $174.50."

Since the case had been continued as to Truett Webb, the effect of this instruction, given at the request of the defendant D. C. Webb, was to confess a judgment for $174.50 and costs if the appellant elected to accept that amount from D. C. Webb; and to leave for further determination the question of any balance claimed due by the appellant from Truett Webb. The appellant should still have that right.

V. *Inadmissible Evidence.* Since there is the possibility of another trial in the circuit court, we call attention to the confidential report of the salesman to the appellant. This report was not shown to be admissible.

It follows that the judgment of the circuit court is reversed and remanded with directions to allow the appellant to elect (1) whether to take judgment against D. C. Webb for $174.50 and interest and all costs and continue the case against Truett Webb under the Soldiers and Sailors Civil Relief Act, or (2) whether to have a new trial against D. C. Webb on remand, and continue the case against Truett Webb under the Soldiers and Sailors Civil Relief Act.

KNOX, J., dissents.