David LAZARUS, Appellant,

v.

MANUFACTURERS CASUALTY INSURANCE COMPANY, a Body Corporate, Appellee.

No. 14513.

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 18, 1958.

Decided April 9, 1959.

Petition for Rehearing Denied May 13, 1959.

---

1. 72 Stat. 171 (1958), 42 U.S.C.A. § 1400 et seq.

2. Int.Rev.Code of 1954, §§ 3301–08, 26 U.S.C.A. §§ 3301–3308.

Danaher, Circuit Judge, dissented.

Mr. David F. Smith, Washington, D. C., for appellant. Mr. Dorsey K. Offutt, Washington, D. C., also entered an appearance for appellant.

Mr. Denver H. Graham, Washington, D. C., with whom Mr. Albert E. Brault, Washington, D. C., was on the brief, for appellee.

Before EDGERTON, WASHINGTON and DANAHER, Circuit Judges.

WASHINGTON, Circuit Judge.

This case concerns the scope of coverage of a garage liability insurance policy issued to a person who was in fact a partner of another—a fact unknown to the insurance company at the time of issuance.

On August 23, 1948, David Lazarus and Arthur Rubinstein formed a partnership to operate the Transport Amoco Service, a gasoline service station leased to them by the American Oil Company. On September 1, 1948, Rubinstein took out a garage liability policy for one year in the name of "Arthur Rubinstein, T/A Transport Amoco Service," as the "named insured." The policy contained the following clause: "Insured: The un-qualified word 'Insured' wherever used includes not only the named Insured but also any partner thereof, if the named Insured is a partnership * * *." Rubinstein used partnership funds to pay such part of the premium as was then paid.

On May 3, 1949, Garland Hudson was run down and seriously injured by an automobile operated by an employee of the service station. Subsequently Hudson brought suit against Lazarus, and his estate was awarded judgment and damages.[1] At the trial, the insurance company (the present appellee) refused to defend Lazarus, on the ground that he was not covered by the policy. This present suit is an action by Lazarus under the garage liability policy to compel the insurance company to pay the judgments, plus Lazarus' attorney fees in the previous suit.[2]

The District Court ruled as a matter of law that because of the special partnership clause Lazarus was covered by the policy on the date of issue. The only dispute was whether Lazarus continued to be covered by the policy on May 3, 1949. There was conflicting evidence as to whether the partnership was still in effect on that date. There was some documentary evidence indicating that the Lazarus-Rubinstein partnership had been dissolved at the end of April 1949, and that on May 1, Lazarus had formed a new partnership with one Sorrentino to operate the Transport Amoco Service. Lazarus insisted on the witness stand that the original partnership was still in existence on May 3, and introduced into evidence a dissolution agreement dated May 17, 1949, signed by him and Rubinstein's agent.

The District Court instructed the jury that the sole issue was whether the part-

1. Hudson v. Lazarus, Civil No. 4832–50, D.D.C., affirmed in part and remanded in part, 1954, 95 U.S.App.D.C. 16, 217 F.2d 344. Rubinstein, who was named as co-defendant, was found not liable.

2. Since the policy was one for liability insurance rather than one for indemnity against actual loss, Lazarus is a proper party plaintiff. See Michel v. American Fire & Casualty Co., 5 Cir., 1936, 82 F.2d 583, 586; cf. American Surety Co. v. Franciscus, 8 Cir., 1942, 127 F.2d 810, 815. Compare 45 C.J.S. Insurance § 930 (1946) with 45 id. § 931. See also note 12, infra, and connected text.

nership was in existence on May 3, 1949. The jury returned a verdict in favor of Lazarus, but the court entered judgment n. o. v. for the defendant insurance company, on the ground that there was no substantial evidence to show that the partnership was in existence on May 3, 1949. This appeal followed.

■■ The risk incurred by the insurance company was of the sort contemplated in the policy: the injury to Hudson was caused by the negligence of an employee of the service station in the course of his duties.[3] Moreover, the nature of the business was clear, and the tradename of the business was plainly and correctly stated in the policy "declaration": "Name of Insured [is] Arthur Rubinstein T/A Transport Amoco Service." The primary intent, we think, was to insure a particular business, and not a particular person. The specific naming of Arthur Rubinstein in the policy declaration does not require the opposite inference, because within broad limits, a partnership may choose any name it wishes, even that of an individual partner.[4]

■ Furthermore, it is established law that coverage of a liability policy will extend not only to the named insured, but to all persons or classes of persons specifically listed in the policy's omnibus clause.[5] Thus in Lloyds Casualty Insurer v. McCrary, 1950, 149 Tex. 172, 229 S.W.2d 605, 607, a casualty policy issued to "Ed Grimes dba Crockett Butane Gas Service," which contained the clause "the unqualified word 'insured' wherever used includes not only the named insured but also any partner," was held to cover both the named insured and the individual partners. The policy in the present case contains virtually the same clause, extending the coverage of the policy not only to the named insured but also to the insured as defined, including any partner if the named insured is in fact a partnership. Such ambiguity as there may be in the clause must be resolved against the insurer.[6] But the language of the clause seems to us nearly unequivocal. Knowledge of the partnership or of the identity of the partners on the part of the insurer is not made a prerequisite to coverage. Nor should it be when the risk contemplated by the insurance company has little or nothing to do with the personal qualities of the insured, as might be the case—for example—with medical malpractice insurance. Here, the ultimate benefit of the insurance accrues to an injured member of the public, rather than to the insured as such,[7] and the courts should bear that fact in mind.[8] If the insurance company had desired to restrict the insurance policy to only those partnerships of which it had knowledge, it could have easily so provided. Under the circumstances, therefore, we think the District Court was correct in holding as a matter of law that Lazarus was covered by the policy on the date of issue, whether or not the insurance company then knew that the business was a partnership, or that Lazarus was a partner.

■ The other question—whether the partnership of Lazarus and Rubinstein was dissolved prior to May 3, 1949—is not decisive. Such a dissolution would

3. The insurance company in fact defended Rubinstein in the suit brought by Hudson, based on the employee's negligence. See note 1, supra.

4. See, e. g., Firestone Tire & Rubber Co. v. Webb, 1944, 207 Ark. 820, 822, 182 S.W.2d 941, 943; Hutchison v. First National Bank, Tex.Civ.App.1933, 67 S. W.2d 1052.

5. See, e. g., Chatfield v. Farm Bureau Mutual Auto. Ins. Co., 4 Cir., 1953, 208 F. 2d 250; Hartford Accident & Indemnity Co. v. Collins, 5 Cir., 96 F.2d 83, certio-

rari denied 1938, 305 U.S. 627, 59 S.Ct. 89, 83 L.Ed. 401.

6. E. g., Hartford Accident & Indemnity Co. v. Collins, supra note 5 at page 84 of 97 F.2d; Fox v. Employers' Liability Assur. Corp., 239 App.Div. 671, 673, 268 N.Y.S. 536, 538 (1934). See also 1 Couch, Insurance §§ 186, 188–88b (1929, Supp. 1958), and cases cited therein.

7. Cf. Moore v. Michigan Hospital Service, 1958, 353 Mich. 198, 91 N.W.2d 301.

8. See Hartford Accident & Indemnity Co. v. Collins, supra note 5.

not necessarily terminate Lazarus' coverage, the policy's term not having expired. "The mere dropping out of an insured partner does not vitiate the policy." Fredenburgh v. Benjamin, 1956, 2 A.D.2d 912, 156 N.Y.S.2d 428, 430.[9] As long as the remaining partner—alone or with others—continues the business under the same name, at the same place, without substantial change, the policy must be held to remain in full force.[10] Here, the business still continued under the name "Transport Amoco Service." If it be assumed that the original partnership had been dissolved, Lazarus, the original partner, was still running the station, either as a sole proprietor or as a partner of Sorrentino. Since Lazarus was insured under the terms of the original policy, he remained insured during the time he continued in the business.[11] Furthermore, we cannot ignore the fact that the policy premium was paid for out of partnership funds and that presumably the policy remained an asset of the firm.

■ We conclude, therefore, that the judgment n. o. v. for the defendant-appellee must be reversed. The question then presents itself whether the jury's verdict for plaintiff-appellant should be reinstated. In considering this, we have reviewed the claims of error which defendant-appellee urged upon the District Court in its alternative motion for a new trial (presented with its motion for judgment n. o. v.), and urged again in its brief in this court. These claims of error, however, are largely directed to matters which are irrelevant, under our view of the applicable law. For example, appellee urges that because the jury in the suit by Hudson against Lazarus and

Rubinstein found the latter not liable, on the ground that on May 3, 1949, he was not a member of the partnership, this makes the issue res judicata. But, as we have pointed out, we consider that the issue of Rubinstein's membership on that date is not controlling here.

There is one claim of error by appellee which stands on a different basis, however. That relates to the item of $1,250 which the jury allowed as attorney fees.

■ While we think plaintiff-appellant is entitled to attorney fees incurred in the prior litigation, the present verdict with regard thereto cannot stand. Plaintiff asked in his complaint for $2,500 on this score, and the jury was so informed in the court's charge. It appears that after the jury had rendered its verdict on the merits of the case, it was discharged. The members separated. Notice was then taken of the fact that no verdict had been rendered on the question of attorney fees. The court ordered that the jury be recalled for the purpose of passing on the omitted question. When the jury assembled the next day, the foreman was interrogated, and stated that the jury had considered the matter of attorney fees, but had reached no conclusion about it. Over the objection of counsel for the insurance company, the court directed the jury to retire to consider the matter. It was not re-sworn. Later, the foreman returned and stated that some of the jury said that they had not heard the claim for fees mentioned in the judge's charge. The judge then recharged them. Under these circumstances, we think the jury's ultimate verdict on the subject of attorney fees should not stand, in the face of the challenge (renewed in this court) of the

9. See, e. g., United States Fidelity & Guaranty Co. v. Booth, 1932, 164 Tenn. 41, 45 S.W.2d 1075; Fidelity Union Casualty Co. v. Hammock, Tex.Civ.App. 1928, 5 S.W.2d 812.

10. Angelo v. Triangle Broom & Brush Co., 1935, 243 App.Div. 838, 278 N.Y.S. 927; Goldstein v. Goldstein, 1935, 243 App. Div. 657, 277 N.Y.S. 908; cf. First National Trust & Savings Bank of San

Diego v. Industrial Accident Commission, 1931, 213 Cal. 322, 2 P.2d 347, 78 A.L.R. 1324.

11. We need not decide whether Sorrentino was also insured under the policy, for it is only Lazarus with whom we are concerned. In Zimmerman v. Industrial Accident Commission, 1931, 119 Cal.App. 253, 6 P.2d 291, the court held the new partner not to be insured.

defendant-appellee. If the parties cannot agree on a suitable amount, the District Court on remand should take appropriate steps to settle the matter, empanelling another jury if necessary. With the exception of this item, the jury's original verdict should be reinstated.

The court should also take appropriate steps to assure that the judgment inures to the benefit of the estate of Garland Hudson, or the beneficiaries thereof, as its or their interests may appear.[12] Under the view we take of the case, it is unnecessary to review the remaining contentions of the parties.

So ordered.

DANAHER, Circuit Judge (dissenting).

I think the trial judge should have directed a verdict for the defendant Company in accordance with well known principles summarized by Judge Soper, dissenting in Snead v. New York Central Railroad Company, 4 Cir., 1954, 216 F.2d 169, 173. Here, the district judge granted the Company's motion for judgment n. o. v. and also denied a new trial. The Snead majority, reversing, ordered a new trial, and at the very least, the majority here should do likewise.

My colleagues have reasoned that even though a garage policy was issued to an individual as a named insured, since he was then one of two partners engaged in operating a service station, the partnership must legally be regarded as the named insured. They next conclude that even if the first partner, the actual named insured, terminated the partnership and withdrew from the business before the date the accident occurred, the remaining partner was still protected as an additional insured under the contract. As I see it, my colleagues write a new contract for the parties. Surely they make new law. I dissent.

I

The parties to this contract were Arthur Rubinstein and the Company. The policy "Declarations" recited "Name of Insured [is] Arthur Rubinstein T/A Transport Amoco Service." Rubinstein's insurance broker, Max Wool, asked that the policy be so written.[1] Thus the Company's agent issued the policy to Rubinstein's broker who paid the Company the premium required. Max Wool was never an agent of the Company.

To be covered at any time, Lazarus surely must have derived his protection as an additional insured because he was a partner of Rubinstein. In my view, if the partnership were terminated, Lazarus took nothing under the contract.

The Company undertook no liability unless it came within its contract which provided that "Assignment of interest under this policy shall not bind the Company until its consent is endorsed hereon * * *." There was no such assignment by Rubinstein, and no consent was endorsed by the Company to an acceptance of liability in behalf of Lazarus. As I read the law, the policy here evidences a highly personalized contract, 7 Appleman, Insurance Law and Practice § 4269, and just who is the named insured as a contracting party is pertinently material. Annotation, 122 A.L.R. 144. An unauthorized assignment therefore will void the policy, Baker v. Highway Ins. Underwriters, Tex.Civ.App., 1947, 209 S.W.2d 979; Jayson v. American Cas. Co., 1931, 9 N.J.Misc. 231, 153 A. 104, even if the assignee is a successor to the originally insured business and even if he continues the business in the same place and under the same name,

---

12. We note that the complaint, in paragraph 1 of its prayer for relief, in effect asks that this be done. And see the Act of May 3, 1935, ch. 89, § 12, 49 Stat. 172, 173: "[T]he judgment creditor shall be entitled to have the insurance money applied to the satisfaction of the judgment." D.C.Code § 40–412 (1951), repealed by the Act of May 25, 1954, 68 Stat. 120, but applicable to the present suit.

1. Wool had no knowledge that there was a partnership in the background or that Lazarus was an undisclosed partner. Neither did the Company.

Annotation, 122 A.L.R. supra at 151, 152; Appleman, op. cit. supra § 4269.

But the majority here introduce a different concept by their interpretation of the "Definitions" clause, stated under "Conditions" with respect to "Insured." The language relied upon reads: "The unqualified word 'Insured' wherever used includes not only the named Insured but also any partner thereof, *if the named Insured is a partnership,* or any executive officer thereof, if the named Insured is a corporation, provided such partner or officer is active in the declared operations." (Emphasis added.) My colleagues disregard the fact that the contracting party, even if he acted for a partnership, was Rubinstein. They say the Company insured a *business,* a name so to speak. But the named insured clearly was Rubinstein only, doing business under a trade name, purely descriptive.

In any view open to us, whether it be Rubinstein or the partnership which was the "named insured," coverage of Lazarus at most could only be derivative.[2] He was not a *party* to the contract in either event.[3] The partnership of Rubinstein and Lazarus, terminable at will, had in fact been terminated before May 3, 1949, the date of the injury, and the Company had not consented to an assignment of the "partnership" policy to Lazarus. Thus on either or both of two stated premises, there was no coverage here. In effect, my colleagues say as a matter of law that Lazarus was covered notwithstanding the facts. Actually there is no ambiguity here, nothing to construe against the Company. But if there were

doubt as to construction, the rule that "doubtful meanings contained in an insurance policy are to be construed in favor of the insured * * * operates only after the identity of the insured has been determined * * *." Wylie v. Mountain Motors, 1943, 126 W.Va. 205, 27 S.E.2d 494, 496. See also Appleman, op. cit. supra §§ 4351–54, 7405.

Surely there is a legal difference between a named insured and an additional insured just as the policy here recognizes. Thus, there always subsisted on this record the question of fact as to who was the named insured. And if there were no partnership as "named insured," Lazarus derived no rights.[4] Here the partnership had been terminated before May 3, 1949, as the facts clearly show. Lazarus wanted his son-in-law in the business and brought him in early in April. As hard feelings developed, Rubinstein quit. He terminated the partnership on April 24, 1949.

Lazarus then on April 28, 1949, signed and delivered to the Riggs National Bank a notice that, *effective April 26, 1949,* Rubinstein was no longer a partner. Lazarus in addition on May 2, 1949, signed and gave notice on the bank's form, that he already had a new partner, his son-in-law, Sorrentino, who also signed the form. Again, Lazarus signed and, under penalty of perjury, filed with the Internal Revenue Bureau a partnership return form 1065 reciting *as of May 1, 1949,* the formation of a partnership, "Jerry Sorrentino and David Lazarus, T/A Transport Amoco Service."

My colleagues refer to the formal dissolution agreement, signed by Lazarus on

---

2. Lloyds Casualty Insurer v. McCrary, 1950, 149 Tex. 172, 229 S.W.2d 605.

3. His entire status thus turned on his relationship with the "named insured." General Accident Fire & Life Assur. Corp. v. Woeffel, 1957, 7 Misc.2d 952, 161 N.Y.S.2d 794; Holthe v. Iskowitz, Wash.1948, 197 P.2d 999; Rent-A-Car Co. v. Globe & Rutgers Fire Ins. Co., 1930, 158 Md. 169, 148 A. 252.

4. Typical cases cited by the majority do not sustain their position as I read them.

For example, in their footnote 10, the First National Trust & Savings Bank case states: "[I]n naming the employer, this policy insured two individuals, Charles Hascall and S. W. Powell, while they are doing business as Hascall & Powell. In other words, they are each insured while doing business under that firm name." [213 Cal. 322, 2 P.2d. 351.] Again, in the majority's footnote 11, the Zimmerman case stated that it was not th. business, but the individuals who were covered.

May 17, 1949. But the record shows that the formal agreement was prepared by Rubinstein's attorney and tendered to Lazarus for signature *before* May 3, 1949, and he simply failed to execute the agreement until May 17. Moreover the evidence discloses that when Rubinstein terminated the partnership, releases were drawn up by the American Oil Company and executed by Rubinstein before May 1, 1949.

The record as a whole is indisputable, and the Riggs National Bank's evidence in particular is totally unrefuted, I submit, that Rubinstein had terminated the partnership before the date of the accident.[5]

My colleagues say "we cannot ignore the fact that the policy premium was paid for out of partnership funds" and accordingly "that *presumably* the policy remained an asset of the firm." (My emphasis.) The records of the same Riggs National Bank to which I have just referred, established that in September 1948, Rubinstein drew a check charged to the partnership account with which he made payment to his broker, Max Wool. How this fact becomes material to establish a presumption that the policy was a firm asset is not clear. Of course it may be cited to establish that reliance upon the Riggs Bank records in 1948 justifies at least equal reliance on the records of the same bank as of April 28 and May 2, 1949, which show that the partnership had been terminated. And since there had been no assignment of the policy as required by its terms, I suggest that it not only was not an asset of the firm, but it afforded no coverage to the successor partnership of Lazarus and Sorrentino.

Perhaps the best clue to an understanding of the majority's philosophy is the suggestion that the court should bear in mind that "the ultimate benefit of the insurance accrues to an injured member of the public, rather than to the insured as such." I venture to suggest that every member of this court carries liability insurance on his automobile to protect himself against possible claims which might arise from the negligent operation of the judge's car. We pay for a contract for fear of a possibly substantial judgment *against us*. It may be understood that substantial progress is being made in many jurisdictions either to provide common funds or to require proof of financial responsibility that members of the injured public may be afforded redress in the event of injury due to the operation of automobiles. Such salutary steps afford no predicate for this court's undertaking to rewrite the terms of the contract before us.

## II

The Company protested in the District Court against the ruling that as a matter of law the policy insured a partnership. It protested against the rulings which rejected its proffers of the verdicts in favor of Rubinstein reached by the jury in Hudson v. Lazarus,[6] and upon which it had relied for its defense of *res judicata*. It protested against the order dismissing with prejudice the complaint of Hudson's legal representative who had been a party plaintiff. It protested against allowing Hudson's erstwhile counsel, next to represent Lazarus. It protested against allowing Lazarus whom it had never insured and who had never satisfied the Hudson judgment to recover in his own name damages of some $23,000. It protested against the action of the trial judge in recalling an already dismissed jury and then, without its being resworn, permitting it to return a verdict for Lazarus' counsel fees upon which it earlier had failed to agree. Yet other claims of error were pressed in the trial court and now are here urged by the Company.

5. Reference back to Hudson v. Lazarus, 1954, 95 U.S.App.D.C. 16, 217 F.2d 344, 345, will show that we there considered the operation of a customer's car by

Harris, "an employee of appellee Lazarus's service station" where Sorrentino "was in charge," on May 3, 1949.

6. Supra note 5.

The Company moved for a directed verdict which was denied. Thereafter the Company filed its motion for judgment n. o. v. or in the alternative for a new trial. As the trial judge considered all of the Company's claims of error and looked back over the record of the whole case, he simply concluded that he was bound to grant the motion for judgment n. o. v., leaving the motion for a new trial for later disposition. He was right, I submit, and he correctly ordered judgment for the Company on February 19, 1958. But, thereafter plaintiff's counsel, *ex parte* we are assured, submitted and the judge signed an order denying a new trial. Obviously he concluded that appellant was not entitled to prevail in any event. My colleagues disregarding the Company's cross-assignments of errors touching a *new trial*, not only now reverse, but order judgment for the appellant. I think the Company's asserted cross errors would nullify the judgment on the verdict in any event.[7]

### III

Consider, to illustrate, the Company's defense of *res judicata*. In Hudson v. Lazarus, supra note 5, the Company appeared for Rubinstein as it was bound to do. A verdict was rendered in favor of Rubinstein, and specially answering, the jury found the partnership had terminated before May 3, 1949.

The pleadings of record show that, relying upon Fed.R.Civ.P. 13(g), 28 U.S.C.A. and pursuant to order of court, Rubinstein filed a cross claim against Lazarus. Thereupon Lazarus filed his answer admitting that he agreed to release Rubinstein from claims arising from the operation of Transport Amoco Service but denying that he had agreed to release Rubinstein from tort liability. By way of "second defense" he pleaded that he and Rubinstein were partners on May 3, 1949, that Rubinstein had purchased for himself and Lazarus the garage policy here in suit, that Rubinstein had assigned his interest in the partnership to Lazarus on May 17, 1949,[8] and that the policy was in full force and effect, for the protection of both Lazarus and Rubinstein.

At pre-trial, Hudson objected to the trial of the cross claim with the trial of the main question of liability. Rubinstein objected to a trial of the issue of insurance and moved to strike the reference. The District Court, however, entered its order that the cross claim of Rubinstein against Lazarus was not to be tried with the case in chief but was to be suspended until after verdict. Lazarus filed requests for instructions concerning Rubinstein's claimed termination of the partnership and his abandonment of the business and further with respect to the effect of the ultimate dissolution of the partnership, evidenced by the agreement of May 17, 1949. The record shows that the jury requested various exhibits bearing upon the claims of Lazarus and Rubinstein with respect to the partnership and its termination, including records of the Riggs National Bank, a copy of the agreement with Amoco, and the dissolution agreement.

The jury returned a verdict in favor of Hudson against Lazarus but *not* against Rubinstein. Thereafter the following occurred:

"The Court: Members of the jury, you have returned a verdict in favor of the plaintiff [Hudson] against the defendant Lazarus, trading as a co-partner, and you also returned a verdict in favor of the defendant Rubinstein, trading as a co-partner. Now I will ask you to go back and consider this question, and this is as a special verdict: Did you find that a partnership existed between the two defendants at the date

---

7. Montgomery Ward & Co. v. Duncan, 1940, 311 U.S. 243, 254, 61 S.Ct. 189, 85 L.Ed. 147; and see Snead v. New York Central Railroad Company, 4 Cir., 1954, 216 F.2d 169, 173.

8. Despite the clause in the policy requiring the Company's consent, never forthcoming, and two weeks *after* the accident in any event.

of this accident or had it terminated before the accident?

"The Foreman: We have reached that verdict, Your Honor.

"The Court: And what is your verdict?

"The Foreman: We find that no partnership existed on May 3rd.

"The Court: Is that the verdict of each and every one of you?

"The Jury: Yes.

"[Counsel for Mr. Lazarus] May I request the jury be polled, Your Honor.

"The Court: Very well."

The jurors individually stated their findings in favor of Rubinstein.

When Hudson's representative next sought an order for allowance of an appeal in forma pauperis, one of the assignments of claimed error attacked the jury's findings as to the termination of the partnership. Rubinstein, with the jury's verdict in his favor, opposed allowance of the appeal in forma pauperis as to the partnership findings as "not in good faith." The trial judge allowed the appeal, noting in a written memorandum special findings that certain of Hudson's questions were meritorious, but *specifically not included* was the ground concerning the jury's findings in favor of Rubinstein. The judge refused to allow the appeal on that ground.

When Hudson filed his appeal in this court, *there was no assignment of error as to the ruling*, nor was there any designation for the record concerning the jury's findings as to the termination of the partnership. The matter was not before us nor was it considered. Thus Rubinstein was out of the case, and judgment in his favor followed.

It seems to me that Rubinstein in the Hudson case was entitled to take the very steps disclosed by the pleadings, as above noted, under Rule 13(g), and see Collier v. Harvey, 10 Cir., 1949, 179 F.2d 664, 668; cf. National Bondholders Corporation v. Seaboard Citizens Nat. Bank, 4 Cir., 1940, 110 F.2d 138, 144; Ohio Cas-

ualty Ins. Co. v. Gordon, 10 Cir., 1938, 95 F.2d 605, 609. Now, when the Company in this case pleads *res judicata* and asserts other errors, my colleagues find them "irrelevant." Of course they are, if it be the law that despite the terms of the contract, the Company is an insurer of Lazarus in any event.