FIRE ASSOCIATION OF PHILADELPHIA v. AMERICAN CEMENT PLASTER
COMPANY.

Decided January 14, 1905.

**1.—Fire Insurance—Agent—Broker.**

Evidence held to show that an insurance broker who took part in the nego-
tiations for insurance on certain property did not represent the insurers, and had
no authority to write insurance for them.

**2.—Same—Incumbrance Vitiating Policy.**

Where an application for insurance, which was by its terms made the basis
on which the insurance was to be effected, stated that there were no liens or in-
cumbrances on the property, when, in fact, a purchase-money lien existed thereon,
such misrepresentation constituted a breach of warranty such as worked a for-
feiture of the policy.

**3.—Same—Lien—Presumption—Forfeiture.**

The insured purchased certain realty, on which stood the buildings subse-
quently insured, together with certain personal property the value of which is
not made to appear, for a gross sum of $4,500, for which a lien was retained.
Of this amount a sum equal to about the value of the realty had been paid at the
time the insurance was effected. Held, that the court was not justified in presum-
ing, in order to avoid a forfeiture of the policy, that the unpaid balance repre-
sented the value of the personal property, and that, therefore, there was no lien
against the real estate.

**4.—Same—Agency—Ratification.**

It was immaterial whether or not the person who signed the application
on behalf of the insured had auhority to do so where the insured ratified his act
in so doing by instituting suit on the policy seeking a recovery thereon.

Appeal from the District Court of Hardeman. Tried below before
Hon. S. P. Huff.

*Crane & Gilbert* and *J. N. Wharton,* for appellant.—The defendant
company having brought suit on the policies in question, with full knowl-
edge of all the facts of how they had been procured, must be held to
have ratified all the statements made in the application written by
Charlton and signed by Newby. Clark & Marshall on Corps., 2185-2188,
2193, 2195, and authorities there cited; Singleton v. Bank of Monti-
cello, 113 Ga., 537; Simmons v. Thompson, 29 App. Div. (N. Y.),
559.

*M. M. Hankins* and *Bishop & Mitchell,* for appellee.—1. The fact
that all of the purchase money for property upon which an insured
building stands has not been paid does not violate that part of the policy
providing for the insured being the sole and unconditional owner in fee
simple of the premises at the date of the insurance. Underwriters' Fire
Assn. v. Palmer & Co., 74 S. W. Rep., 604; Ellis v. Insurance Co. of
N. A., 32 Fed. Rep., 646; Alamo Fire Ins. Co. v. Brooks, 32 S. W. Rep.,
714; Almo Fire Ins. Co. v. Lancaster, 28 S. W. Rep., 126.

2. The interest of a vendee of realty under a land contract is "sole
and unconditional ownership," within the meaning of a fire policy stipu-
lating that it shall be void if the interest of assured shall be other than

sole and unconditional ownership. East Texas Ins. Co. v. Dyches, 56 Texas, 573; Davis v. Pioneer Furn. Co. (Wis.), 78 N. W. Rep., 596; Dupreau v. Hibernia Ins. Co. (Mich.), 5 L. R. A., 761; Mathews v. Capital Fire Ins. Co. (Wis.), 91 N. W. Rep., 673; Insurance Co. v. Crockett, 75 Tenn., 725-729; Insurance Co. v. Hughes, 108 Fed. Rep., 497; Loventhal v. Home Ins. Co., 112 Ala., 108; Loventhal v. Home Ins. Co., 33 L. R. A., 258; Pelton v. Westchester Fire Ins. Co., 77 N. Y., 605; Lycoming Fire Ins. Co. v. Haven, 95 U. S., 245, 24 L. Ed., 473; Gaylord v. Lamar Fire Ins. Co., 40 Mo., 13, 93 Am. Dec., 289.

3. The court did not err in the fifteenth conclusion of fact in finding that, under the evidence in this case, E. L. Charlton was the agent of the insurance company. Virginia Fire & Mar. Ins. Co. v. Cummings, 78 S. W. Rep., 716; Queen Ins. Co. v. Union Bank & Trust Co., 111 Fed. Rep., 697, 49 C. C. A., 555; May v. Assurance Co., 27 Fed. Rep., 260; McGraw v. Insurance Co., 54 Mich., 145, 19 N. W. Rep., 927; McElroy v. Insurance Co., 94 Fed. Rep., 990, 36 C. C. A., 615; Insurance Co. v. Hartwell, 123 Ind., 177, 24 N. E. Rep., 100; Insurance Co. v. Wiard, 59 Neb., 451, 81 N. W. Rep., 312; Insurance Co. v. Ewing, 90 Fed. Rep., 217; Insurance Co. v. Allen, 1 So. Rep., 202.

OPINION.

SPEER, ASSOCIATE JUSTICE.—The Fire Association of Philadelphia and the Scottish Union and National Insurance Company instituted suits in the District Court of Hardeman County against the American Cement Plaster Company to cancel two certain policies of insurance for $1,000 each, written by these companies upon property of the cement plaster company in Hardeman County, because of alleged misrepresentations of fact made by the defendant company in reference to the ownership of the real estate upon which the insured property was situated. It was alleged that the defendant company was not the owner of the property in fee simple, and that there were incumbrances upon the land which made the policies void. The American Cement Plaster Company answered these suits, and, the property having been destroyed by fire, sought a recovery upon each of the policies. Answering these cross-bills, the plaintiffs filed supplemental petitions, in which they set up the following matters of defense:. that the said policies contained a stipulation that "this entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; or if the interest of the insured in the property be not truly stated herein, or in case of fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss." The supplemental petitions set forth the application made by the agent of the defendant company for said policies, stating, among other things, that there were no incumbrances on the property by mechanics' lien, judgment, mortgage or otherwise, and concluding as follows: "The applicants hereby covenant and agree to and with the said company that the foregoing is a just, full and true expression of all the facts and circumstances in regard to the property heretofore mentioned, and said an-

swers and representations are considered the basis on which insurance is to be effected, and the same is understood as incorporated in and form a part of the policy, and further covenant and agree that if the situation or circumstances are changed, or hazard increased, or property becomes incumbered in any manner during the term of any policy or policies of insurance of said company covering the said property, or any renewal of said policy or policies, will notify the said company forthwith of such alteration, increase of hazard or incumbrance, and hereby declare and acknowledge that this is the act and statement of the owner of said property, and warranty on the part of the assured, whether the answers have been written by the applicant in person or not, dated August 24, 1900. American Cement Plaster Company, owner and applicant, per C. H. Newby, Supt."

The insurance companies also pleaded that the defendant company, by its general manager, made sworn proofs of loss of the property by fire, in which he stated that the property was not incumbered, and that such statements were false, and known to be false when made. Upon these grounds, and others pleaded, but not necessary here to notice, it was alleged that the policies were breached, and the appellant companies not liable upon them. The defendant denied that there was any written application for insurance made by it; that the agent of the insurance companies soliciting the insurance was informed, and knew of the true condition of the title to the lands upon which the insured property stood; that C. H. Newby, who signed the pretended application for insurance, was not authorized so to do, and denied any misrepresentations whatever in obtaining the policies declared upon. There was a replication by the insurance companies of ratification of the acts of Newby. The two suits were consolidated, and trial had before the district judge, which resulted in a judgment in favor of the American Cement Plaster Company against the two insurance companies, from which they have appealed to this court.

The first question we find it necessary to dispose of, though by no means the first presented in appellants' brief, is whether or not one Charlton, of Lawrence, Kansas, was the agent of appellants in procuring the insurance policies sued on. The trial judge found that he was, but with this conclusion we are not able to agree. Most of the evidence bearing upon this question consists of the correspondence between Charlton, who was a local insurance agent, and Messrs. Trezevant & Cochran, general agents of the appellant companies for Texas, with offices at Dallas, and the local agent of appellants, J. L. Elbert, of Quanah. Without setting out in detail this correspondence, we deem it sufficient to say that it establishes, in our minds, the conclusion that Charlton was a mere broker, acting between the appellee and the appellants, and that whatever information he obtained from the officers of the appellee company would not be imputed to the appellants. He did not represent the appellants, nor had he any authority whatever to write insurance for them in Texas, but, upon writing to their general agents at Dallas with reference to obtaining insurance upon appellee's property at Quanah, he was referred by them to their local representative at the latter place, and the matter seems to have been placed wholly in the hands

and at the discretion of such local agent, who subsequently wrote the policies, collected the premium, and expressly refused to allow said Charlton any commissions on the transaction, or in any way to recognize him as the company's representative, unless possibly he was authorized to collect and remit the premium, which he never did. (East Texas Fire Ins. Co. v. Blum, 76 Texas, 653; East Texas Fire Ins. Co. v. Brown, 82 Texas, 631.)

This brings us to the question of misrepresentations in the application with reference to incumbrances upon the property. We conclude from the evidence that the appellee, a corporation, acting through its vice-president, A. Henley, contracted with the Texas Cement Company, a corporation, for the purchase of the northwest one-fourth of section 79, block H, Houston & Texas Central Railway Company survey, in Hardeman County, upon which was situated the buildings covered by the insurance policies, for the sum of $4,500. That of this amount the sum of $2,500 was paid at the time of the purchase. That it was the understanding, which was subsequently carried out, that the Texas Cement Company should make a deed conveying the property which was to be delivered to said Henley only upon the payment in full of the recited consideration of $4,500. The evidence indicates that, along with the land and plaster mills, was some personal property consisting of horses, wagons, etc., the value of which is not shown by the evidence. At the time of the application above set forth there had been paid on this property, in addition to the $2,500 already mentioned, something more than $1,000, expended in taking up some purchase money liens, taxes, etc., and there remained unpaid of the $4,500 about the sum of $1,000. The deed had been executed by the Texas Cement Company, and was then held in escrow by a bank in Lawrence, Kansas, accompanied by a draft on the American Cement Plaster Company for the amount remaining unpaid, but the American Cement Company declined to pay the amount of this draft and to receive the deed for the reason that the title to other lands purchased by it from some of the officers of the Texas Cement Company, at the time of the purchase of the property in question, had not been perfected, contending that, without this additional land, it had paid the reasonable value of the quarter section of block 79. Thus the matter stood at the date of the application, and thus it stood at the date of the fire and the making of the proofs of loss by appellee's general manager at Quanah.

The trial court found, as a matter of fact, that the reasonable value of the quarter section of block 79, separate and apart from the other land above referred to, was between $3,000 and $3,500, and that, since appellee had paid to the Texas Cement Company this amount, he would presume, in order to avoid a forfeiture of the policies, that the difference between this amount and the agreed purchase price of $4,500 represented the value of the personal property, which was not otherwise shown, and that, therefore, there was no lien or incumbrance against the real estate, and the representations in the application and proofs of loss were, in point of fact, true. But we are also unable to agree to this finding. While it is true the evidence fails to disclose the amount or the value of the personal property conveyed, we take it to be immaterial,

since the transaction between the Texas Cement Company and appellee was an entirety, and not separate sales of the realty and of the personal property. A lump sum of $4,500 was agreed upon as the purchase price of all the property. The deed which recited this consideration was not to be delivered until the entire amount was paid; this being true, it certainly can not be said that the land is free of incumbrance until the full amount of $4,500 has been paid, even though it represents in part the value of personal property sold with the land. Every reasonable intendment should be indulged so as to avoid a forfeiture of the contract of insurance, if possible, but this could hardly go to the extent of making a different contract between the parties from that which they actually intended to make and did make for themselves. We conclude that it is immaterial that A. Henley declined personally to sign the application because of these statements. He knew the companies in Texas would not issue policies upon this property without a written application, and permitted Charlton to prepare the same, knowing its contents, and forward it to the local agent at Quanah, with instructions to call upon their representative, Newby, at that place, for additional information. We also conclude that it is immaterial whether Newby had authority, in the first place, to sign the application or not, since the appellee has fully ratified his acts by instituting suit and seeking to recover upon the policies thus obtained.

It follows from this that the misrepresentations contained in the application and in the proofs of loss, amounting, as they do, to a breach of warranty, should work a forfeiture of the policies declared upon, and we accordingly reverse the judgment of the District Court and here render judgment in favor of appellants.

*Reversed and Rendered.*

Application for writ of error dismissed by the Supreme Court for want of jurisdiction.