[Civ. No. 4004. Third Appellate District.—April 28, 1930.]

DETROIT TRUST COMPANY (a Corporation), Respondent, v. TRANSCONTINENTAL INSURANCE COMPANY OF NEW YORK (a Corporation), Appellant.

Guy R. Kennedy and Redman, Alexander & Bacon for Appellant.

Carleton Gray and Chickering & Gregory for Respondent.

THOMPSON ·(R. L.), J.—This is an appeal from a judgment in favor of plaintiff in an action for indemnity on a fire insurance policy.

The plaintiff is the trustee of the Feather River Pine Mills Company, which operates its lumber-mills near Oroville in Butte County. It was successor to the Hutchinson Lumber Company. In 1923 a trust indenture was executed by the first-mentioned company to the plaintiff by the terms of which it was provided the trustee should keep the milling property insured for eighty per cent of its insurable value, payable in the name of the trustee. Marsh & McLennan were general insurance agents. However, for several years this company had acted as brokers for the milling company

in procuring its insurance and for this purpose became its agent. Mr. Land, president of the Feather River Pine Mills Company, testified, "They (Marsh & McLennan) were acting as our brokers." They were not the agents of the defendant Insurance Company. Mr. Hoditz, chief accountant of this brokerage company, testified: "Marsh & McLennan did not . . . act as general agents for the Transcontinental Insurance Company of New York. Marsh & McLennan had nothing to do with the writing or issuance by the Transcontinental Insurance Company of New York of its policy numbered 79,348." Pursuant to directions from the plaintiff said brokers procured and forwarded to it September 1, 1927, several policies of insurance on the milling plant, equipment and stock on hand aggregating a large sum of money. Included among these policies was one numbered 79,348 for $2,500 written by the defendant Insurance Company. The uniform rate of premiums on these policies had formerly been 1.319 per cent. According to custom a large amount of insurance such as is involved in this transaction was apportioned among twenty or more insurance companies so as to divide the liability. This was done in the present instance. The defendant company carried only this one small policy and another one for $6,500, which is not involved in this action. In 1927 the general rate of all such policies was increased by the Pacific Board of Underwriters to 3.14 per cent. The various insurance companies which had executed these policies had charged plaintiff's brokers with the premiums at the increased rate of 3.14 per cent. This increased rate of insurance was charged from July 15, 1927. On September 16, 1927, seventeen of these policies, aggregating the sum of $348,750, including the $2,500 policy which is involved in this action, were returned by the plaintiff to its said agents, Marsh & McLennan, accompanied with a letter which reads in part: "Confirming conversation of yesterday, together with understanding, we advise as follows: You will cancel without charge to us, for either the so-called earned premium or otherwise, the following policies: . . . 79,348, Transcontinental, $2,500. . . . The above policies were handed to you by the writer on yesterday with advice that we would not pay for these policies and would not want any policies issued at figures above our old rate, namely, 1.319."

Instead of procuring the cancellation of these policies, the brokers held them for some three weeks attempting to obtain an adjustment of the rate. In the latter part of September a representative of the firm of Marsh & McLennan visited the office of the defendant in San Francisco and informed it that the plaintiff refused to accept, among others, policy number 79,348 for $2,500 at the increased rate and requested the defendant to issue a cover note in lieu of the policy. This the defendant refused to do and declined to cancel the policy until the premium, which was at this time earned, was fully paid. Mr. Morrice, representing the defendant, testified in this regard: "I talked to him about the flat cancellation. . . . Q. And he (Mr. Parry, manager of the defendant company) told you then that they would not cancel the policy flat, didn't he? A. Why yes, he said . . . that they could not cancel the policy flat." The premium on this policy was subsequently paid to the defendant in full on September 27th by the check of Marsh & McLennan, which check was accepted and cashed by the defendant. The policy was retained in the office of plaintiff's brokers. The fire which destroyed the property covered by this policy occurred October 6, 1927. Proof of loss in the total sum of $1,162,504.08 was subsequently duly made. Upon demand of the defendant, without further communication with the plaintiff about the matter, the brokers, Marsh & McLennan, returned the policy to the defendant after the fire on October 12th and it was thereupon marked "canceled." Without knowledge or consent on the part of the plaintiff, on December 28th the defendant credited the brokers with the amount of this premium which had been previously paid. Upon the trial the court found that the defendant "executed and delivered to said Feather River Pine Mills" Company policy number 79,348 for $2,500 insurance on August 8, 1927. The court further found that this policy "was not cancelled by said defendant and was at all times prior to said fire and on the date thereof in full force and effect"; that in said transaction, with relation to the insurance of said property, the brokers Marsh & McLennan were the agents of plaintiff and were not the agents of the defendant.

The complaint alleged that the value of "said property so damaged and destroyed by said fire was the sum of $1,162,504.28," and that said property was insured in the

aggregate sum of $1,226,641.21, including said $2,500 policy which is involved in this action. The answer denied that "said property was insured against loss or damage by fire in the sum of $1,226,641.21, or any sum in excess of the sum of $1,033,891.21, and alleges that said last-named sum does not include any insurance issued by the defendant herein." Upon the foregoing pleadings the court properly found from defendant's admission that the property was insured for a total sum of $1,033,891.21 in addition to said $2,500 policy. Thereupon judgment was rendered upon said policy for $2,369.28. Accepting as correct the allegations of the answer with respect to the total amount of insurance with which the milling property was covered at the time of the fire, the loss by fire greatly exceeded the aggregate insurance and under such circumstances the judgment may not be said to be excessive. Even though the total insurance to which the plaintiff might resort, to compensate its loss by fire, exceeded the amount of loss by substantially $64,137, as appears from the findings, still the amount of the judgment which was rendered was not excessive.

The defendant contends that the insurance brokers Marsh & McLennan were not acting as the agents of the plaintiff in this transaction; that plaintiff's return of the policy to these brokers, together with the accompanying letter, constituted a repudiation of such agency and a definite rejecting of the policies, and that the subsequent payment of the premium on this bond by Marsh & McLennan was made by mistake. The question of agency must, however, be determined from all the facts and circumstances of the case, together with the conduct and communications between the parties. If there is substantial evidence to support the court's findings with relation to the agency, then the judgment should be affirmed. If Marsh & McLennan had authority from the plaintiff to procure this policy of insurance and was not limited as to the rate of premium it was permitted to pay, then the defendant should be bound by this policy, for the policy was in the possession of the plaintiff's agent uncanceled and the premium was fully paid. The controversy between the plaintiff and its agent respecting the rate of insurance had nothing to do with the validity of the policy. The payment of the premium and the retaining of the policy by Marsh & McLennan after their fruitless

effort to adjust the rate with the defendant is a circumstance strongly tending to show their agency for the plaintiff. Regardless of their relationship toward other insurance companies, there is ample evidence to support the finding that in this particular transaction Marsh & McLennan acted as the agents of the plaintiff. Mr. Hill, who was manager of the milling company, testified: "Marsh & McLennan had full charge of all of the insurance for the Hutchinson Lumber Company. . . . Under mere general instructions as to the extent of the lines to be carried, they were charged with all of the details of seeing that we were kept covered and seeing that we maintained conditions at the plant that we were required to maintain under the policies and seeing that our rates were kept low and in general serving us in the capacity of insurance agents—brokers—and managers to whom we intrusted all of our insurance affairs."

In the case of *Solomon* v. *Federal Ins. Co.*, 176 Cal. 133, 138 [167 Pac. 859, 861], the following language is used which is peculiarly applicable to the present case: "It is well settled that where, in circumstances such as are presented here, an insurance agent requests insurance from a company which he does not represent, he is acting for the insured."

 This agency in behalf of the insured may exist even though the commissions are paid to the broker by the insurer. (*Solomon* v. *Federal Ins. Co., supra; Parrish* v. *Rosebud M. & M. Co.*, 140 Cal. 635 [74 Pac. 312]; *Bennett* v. *Northwestern Nat. Ins. Co.*, 84 Cal. App. 130, 135 [257 Pac. 586]; *Mahon* v. *Royal Union Mut. Life Ins. Co.*, 134 Fed. 732; *McGraw Woodenware Co.* v. *German Fire Ins. Co.*, 126 La. 32 [20 Ann. Cas. 1229, 38 L. R. A. (N. S.) 614, 52 South. 183]; 5 Cooley's Briefs on Insurance, 2d ed., p. 1452.)

We are satisfied the record sufficiently supports the findings to the effect that Marsh & McLennan were the agents of the plaintiff in this transaction, that the policy was not canceled at the time of the fire, but, upon the contrary, was then in full force and effect and that the defendant was therefore liable.

The judgment is affirmed.

Finch, P. J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 28, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 26, 1930.