HERMAN ALLISON, *et al.*, COMPLAINANT, APPELLEE, *v.*
NATIONAL UNION FIRE INS. CO., DEFENDANT, APPELLANT.

*(Knoxville,* September Term, 1931.)

Opinion filed November 14, 1931.

STEINMETZ & LOWE for complainant, appellee.

SMITH, CARLOCK & POORE, for defendant, appellant.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This suit was brought by Allison, Peterson and Coward against the National Union Fire Insurance Company on an insurance policy covering an automobile, which was destroyed by fire. The chancellor dismissed the bill but the Court of Appeals reversed his decree and rendered a decree for complainants in the sum of $2500, to be credited with a small sum realized from salvage of the car. The writ of *certiorari* was granted by this court.

Coward sold the automobile to Allison and Peterson. The consideration was paid in trade, cash, and title notes. A policy of insurance was procured, in the sum of $2500, payable to "Twin City Bus Line, Maryville, Tennessee, and/or H. W. Coward, Knoxville, Tennessee, as their interests may appear." Twin City Bus Line was the name under which Allison and Peterson conducted their business.

Within two or three months Coward took the automobile back from Allison and Peterson. Meanwhile Coward had transferred the title notes, executed to him by Allison and Peterson, to one Harkness. Coward agreed to relieve Allison and Peterson from liability on these notes when he took back the automobile. The car was in Coward's possession and $1200 of title notes outstanding in the possession of Harkness when the car burned.

In defense of the suit defendant company pleaded a provision of the policy setting out, among other things, that "this entire policy shall be void unless otherwise provided by agreement in writing added hereto . . . in case of any change in the nature of the insurable interest of the assured in the property described herein either by sale or otherwise."

Coward claims to have notified an agent of defendant company that he had taken the car back from Allison and Peterson. He does not, however, claim to have given this agent any notice of the sale of the title notes to Harkness. There was no agreement in writing procured from the defendant company or its agent authorizing any change in title, interest, or possession of the property.

Inasmuch as the policy was payable to Coward and the Twin City Bus Line as their interests may appear, it may be conceded that defendant company contemplated a change of the respective interests of these parties. It could not be said, however, that defendant company contemplated the transfer of an interest in the car to a third party without its permission.

This is not a case where the insurer relies on a misrepresentation or false warranty as to title, interest, or possession and section 3306, Thompson's-Shannon's Code, is not applicable. This section provides that such misstatements must have been made with actual intent to deceive or must have increased the risk of loss in order to avoid the policy.

Neither is this a case in which there was such silence or failure to disclose conditions attending the execution of the contract as is claimed to defeat recovery on the policy. *Light* v. *Insurance Co.*, 105 Tenn., 480, and

*Hughes* v. *Miller's Mutual Fire Insurance Co.*, 147 Tenn., 164, and the cases therein reviewed, are accordingly not in point.

The parties stipulated that the policy should be void "in case of any change in the nature of the insurable interest of the assured in the property described herein." At the time the policy was issued Coward owned the legal title to the property and Allison and Peterson owned the equity. At the time of the fire Allison and Peterson had no interest, except a contingent liability on the title notes. Coward owned the equity and Harkness owned the legal title. Or, laying aside the technical relation of the parties, the property had been pledged to Harkness to secure the payment of $1200 worth of notes at the time of the fire.

There are a number of decisions holding that a clause of an insurance policy prohibiting assignment by the insured, or a change in the title and interest of insured, should be construed to provide against an entire divesting of the title and interest of the insured and that a chattel mortgage given by him is not within such policy provision so long as he keeps an insurable interest in the property. Joyce on Insurance, sec. 2268, 26 C. J. 234, 14 R. C. L., 1114, Note Anno. Cas. 1918D, 864.

The language of the policy before us does not admit of such an interpretation. The policy here sued on prohibits "any change in the nature of the insurable interest of the assured." True, all such provisions are to be strictly construed but by no sensible construction could it be said such a transaction as took place in this case was permissible under this contract of insurance.

An insurance contract is personal in its nature, as this court has often declared, and is avoided by a sale

of the property. *Laundry Co.* v. *Insurance Co.,* 121 Tenn., 13; *Hobbs* v. *Memphis Insurance Co.,* 33 Tenn. (1 Sneed), 444. A misstatement as to title and ownership often avoids the policy. *Standard Groc. Co.* v. *National Fire Ins. Co.,* 161 Tenn., 640; *Foster* v. *Illinois, etc., Ins. Co.,* 156 Tenn., 436.

Automobiles change hands so often, are so often owned by irresponsible parties, it seems to us entirely proper for an insurer to protect himself by a provision such as the one we are considering. Many persons own no tangible property except their cars. To many such a personal obligation is not a matter of consequence. There would be no inducement for such persons to preserve such property if they might insure it for full value and then mortgage it.

Reversed and dismissed.